UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CARLTON SYLVESTER CLAY,**

        **Petitioner,**

v.                                                                   **Civil Action No.  2:17-cv-627**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

        **Respondent.**

## REPORT AND RECOMMENDATION

      This matter is before the Court on *pro se* Petitioner Carlton Sylvester Clay's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 ("the Petition"), ECF No. 1, and Respondent, Harold W. Clarke, Director, Virginia Department of Corrections' ("Respondent") Motion to Dismiss the Petition for Writ of Habeas Corpus. ECF No. 11. The matter was referred for disposition to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 11, be **GRANTED**, and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 1999, Petitioner was convicted in the Circuit Court for Alexandria, Virginia of Malicious Wounding, Use of a Firearm in the Commission of a Felony, Possession of a Firearm by a Convicted Felon, and Possession of a Weapon. ECF No. 12 at 1.  Petitioner was sentenced to a total of forty-three (43) years and twelve (12) months, with three (3) years and twelve (12) months of time suspended.  ECF No. 12 at 1.  Petitioner is currently incarcerated at Nottaway Correctional Center, a facility owned and operated by the Virginia Department of Corrections ("VDOC").  ECF No. 12 at 1.   In the matter before the Court, Petitioner challenges 2015 disciplinary proceedings that resulted in a loss of one hundred and eighty (180) days of his good time credit.

A. Disciplinary Proceeding

On April 28, 2015, Petitioner received an institutional disciplinary offense charge for possessing weapons (Offense # 102) that were discovered in his shared cell on April 10, 2015. ECF No. 12, attach. 1 at 2.[1]  *See also* ECF No. 12, attach. 1 at 9 (describing Offense # 102 as "Possession or use of a weapon, sharpened instrument, ammunition, explosive or incendiary device, or any chemical, poison or substance capable of maiming, blinding, disfiguring or causing any serious injury or death (weapons include facsimiles of these devices)").  On April 28, 2015, Petitioner was provided with a Disciplinary Offense Report detailing the offense and advising Petitioner of the following rights: (1) that Petitioner could request an advisor for his disciplinary hearing; (2) that Petitioner could request the presence of witnesses at the disciplinary

---

[1] A charged cell phone was also recovered from the light fixture, for which Petitioner and his cell mate received an institutional disciplinary Offense # 131 charge.  Although Petitioner challenges neither his conviction of Offense # 131 nor the penalty imposed, the undersigned finds that recitation of the full factual background is necessary in order to provide a fulsome explanation for the undersigned's interpretation of Petitioner's claims and recommended disposition of the same.

hearing; (3) that Petitioner could request documentary evidence; (4) that Petitioner could request twenty-four (24) hours of preparation time prior to his disciplinary hearing; (5) that Petitioner could appear at the disciplinary hearing; (6) that Petitioner had the right to question the reporting corrections officer; (7) that Petitioner had the right to enter into a penalty offer; and (8) that Petitioner could remain silent. Petitioner was advised on April 30, 2015 that his hearing was scheduled for May 7, 2015. ECF No. 12, attach. 1 at 3. *See also* ECF No. 12, attach. 1 at 61.

On the morning of May 7, 2015, disciplinary hearings regarding both Offense # 102 and Offense # 131 were conducted before Institutional Hearings Officer Harmon ("IHO Harmon")[2], at which time Petitioner appeared, as did Petitioner's advisor, the reporting corrections officer, Lt. W. Moiczek ("Lt. Moiczek"), and Maintenance Man Gratz ("Gratz").[3] The record before the Court includes the following factual and procedural background, as detailed in the affidavit of Karen Stapleton, Manager of the Offender Discipline Unit for the Virginia Department of Corrections, which was submitted in support of Respondent's Motion to Dismiss:

> Virginia Department of Corrections records reflect that on April 10, 2015, during a search of [Petitioner's] assigned cell (D-125B) at Nottoway Correctional center, Officer Freeman removed four weapons from the light fixture in the cell. Maintenance employee Gratz removed the light fixture above the wall lockers and Officer Freeman removed 3 weapons that were 9 ½ inches long and one weapon that was 10 ½ inches long. [Petitioner] shared the cell with offender N. Tesfaye. Both offenders were interviewed several times by Investigator Moiczek and neither offender claimed ownership of the weapons so both offenders were charged with Disciplinary Offense # 102, possession of a weapon or sharpened instrument. . . .

---

[2] *See* ECF No. 12, attach. 1 at 7 ("Institutional Hearings Officer (IHO) – The employee who is the sole fact finder in a disciplinary hearing and decides guilt or innocence of the accused offender and imposes an appropriate penalty.").
[3] It appears that Petitioner's hearing for Offense # 131 occurred at 8:45 AM on May 7, 2015, *see* ECF No. 12, attach. 1 at 65, whereas Petitioner's hearing for Offense # 102 occurred later that morning at 9:26 AM on May 7, 2015, *see* ECF No. 12, attach. 1 at 45.

On April 28, 2015, [Petitioner] was served with a copy of the Disciplinary Offense Report at Nottoway Correctional Center and was advised of his due process rights for his upcoming hearing . . . . [Petitioner] signed the report acknowledging that he had been advised of his due process rights. Offender S. Matthews was assigned to advise and assist [Petitioner] during his disciplinary hearing. . . .

On May 7, 2015, at 9:26 a.m., [Petitioner's] disciplinary hearing for offense # 102 was held at Nottoway Correctional Center. [Petitioner] and his inmate advisor were present for the hearing and [Petitioner] pled not guilty to the charge. Also present for the hearing was the Reporting Officer (Investigator Moiczek), Officers Freeman and Wise and maintenance employee Gratz. According to the audio recording of the hearing, Inmate Hearings Officer Harmon reviewed [Petitioner's] due process rights with him and [Petitioner] acknowledged that he had reviewed the disciplinary report with his advisor, had been advised of his rights and received a copy of the report.

Prior to the hearing, [Petitioner] submitted witness request forms for Officer B.T. Wise, Officer A. Freeman, maintenance employee Gratz, and offender N. Tesfaye, # 1552409. IHO Harmon obtained statements from each witness and they were read for the record. [Petitioner] also submitted requests for documentary evidence including the policy on cell inspections, a copy of the cell inspection form for cell D-125 West Side, the policy on common areas, and incident reports written by Freeman, Wise or Mr. Gratz. [Petitioner's] request for the incident reports and the policy on cell inspections were not provided to [Petitioner] because they are restricted for offender possession. The cell inspection form request was denied by IHO Harmon because the information was deemed not relevant in that staff are not required to remove light fixtures during cell inspections. IHO Harmon provided [Petitioner] with language from OP 861.1(VIII)E(1)[4] describing the area of an offender's responsibility when offenders are assigned to a double cell. . . .

Reporting Officer Moiczek testified that during a quarterly lockdown at the institution, Mr. Gratz was instructed to remove the light fixtures in the cells. During a search of [Petitioner] and Tesfaye's cell on April 10, 20[15], Mr. Gratz

---

[4] "OP" stands for Operating Procedure. *See* ECF No. 12, attach. 1 at 6 ("This operating procedure, to be known as the Offender Disciplinary Procedure, establishes the code of offenses, the penalties for violation of this code, and the disciplinary process for all offenders incarcerated in Department of Corrections institutions.").

removed the light fixture in D-125 and behind the fixture, Officer[s] Freeman and Wise recovered 4 weapons. A cellphone was also found when the light fixture was removed by Gratz. [Petitioner] and Tesfaye received a separate charge for this device and [Petitioner's] disciplinary hearing for the corresponding # 131 offense (possession of a communications device) was also held on May 7, 2015 at 8:45 a.m. During the hearing for Offense # 131 . . . maintenance employee Gratz testified that when he removed the light fixture, all screws holding the light fixture to the wall were loose including the two screws holding on the light cover, the four screws holding the ballast cover and the six nuts holding the fixture to the wall. For Offense # 131, [Petitioner] was found guilty and received a penalty of time already served in disciplinary segregation. . . .

The sharpened items were recovered and given to Lt. Moiczek who described the weapons, including the condition of the weapons indicating they were wrapped on the ends as if they would be used for self-defense. During the hearing for Offense # 102, Moiczek further testified that he interviewed both offenders several times to determine who the weapons belonged to, but neither offender would accept responsibility for the weapons. Both offenders were charged for possession of the sharpened instruments. When asked if he had any questions for Lt. Moiczek, [Petitioner] asked to see pictures of the weapons and stated that the knives were something from "Rambo in the 70s" and they were not his. [Petitioner] stated that he did know what question to ask. Neither [Petitioner] nor his advisor had questions for Lt. Moiczek, Mr. Gratz or Officer Wise. When asked if he had any questions for Officer Freeman, [Petitioner] asked Freeman a question regarding [Petitioner's] demeanor when the knives were found. [Petitioner] testified that he had been charge free for 8 years and had never seen knives that big and there was nothing that he could say. [Petitioner] indicated that the knives were designed to kill and there was nothing in his record to indicate that they were his. [Petitioner's] advisor made no statement.

ECF No. 12, attach. 1 at 2-5.

At the conclusion of the May 7, 2015 hearing for Petitioner's Offense # 102 (Possession of a Weapon) charge, IHO Harmon found Petitioner guilty of Offense # 102, and detailed her reasons for such decision in writing. *See* ECF No. 12, attach. 1 at 45 ("Four weapons was [sic] found in the light fixture of the offender's cell: neither him nor his cell partner claim ownership.

Maintenance Gratz [sic] testified that the screws in the light fixture were loose and could use one's hand to remove them."). After announcing the finding of guilt, IHO Harmon inquired as to whether Petitioner or his advisor would suggest a penalty. Both said they would prefer a penalty of time served and IHO Harmon indicated that Petitioner had already been given a "time served" sanction for his other case (the violation of Offense # 131).   ECF No. 12, attach. 1 at 5. Ultimately, Petitioner was penalized with the loss of one hundred and eighty (180) days good time. He was advised of his right to appeal and was instructed on how to submit the appeal to the Warden. Petitioner exercised his Level I appellate rights and appealed IHO Harmon's finding to Warden Carl A. Manis ("Warden Manis"), which was denied on June 26, 2015. ECF No. 12, attach. 1 at 90-91 ("I can find neither procedure error nor justifiable reason to modify or disapprove the determination of guilty or the penalty assessed by the Hearings Officer. **Your appeal is denied**.") (emphasis in original). Petitioner appealed Warden Manis' decision to the Regional Administrator (via a Level II appeal), where the finding of guilt was similarly upheld on August 21, 2015. ECF No. 12, attach. 1 at 81 ("Upon review of all documents submitted, this office finds no procedural errors. Thus, based on the preponderance of evidence against you, the charge is **UPHELD**.") (emphasis in original).

B. Section 1983 Complaint

On January 22, 2016, Petitioner filed a *pro se* civil Complaint pursuant to Section 1983 alleging that the disciplinary proceedings that resulted in his loss of good time credit violated his civil rights. *See* Case No. 2:16-cv-36, ECF No. 1. On February 16, 2016, the Complaint was dismissed without prejudice as to Petitioner's right to vindicate his rights as a habeas action. Case No. 2:16-cv-36, ECF No. 2 (finding that the Complaint failed to state a claim upon which

6

relief could be granted because "Plaintiff's real challenge is to the sufficiency of the evidence. Plaintiff challenges whether the light fixture is really a common area for which he can be held liable. Plaintiff argues that the weapons and cell phone could have been in the light fixture since before Plaintiff was assigned to that cell.  Plaintiff asserts that the hearing officer should have considered his exemplary prison record.  However, there is undeniably some evidence in the record to support Plaintiff's conviction. This Court cannot weigh the evidence against Plaintiff as long as some evidence supports the finding of the hearing officer.") (citing *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985)).  Petitioner appealed the Dismissal Order to the Fourth Circuit.  Case No. 2:16-cv-36, ECF No. 4.  On October 24, 2016, the Fourth Circuit issued an Opinion affirming the District Court's dismissal of Petitioner's Section 1983 Complaint.  Case No. 2:16-cv-36, ECF No. 12.  On November 29, 2016, the Fourth Circuit denied Petitioner's petition for rehearing and rehearing in banc, Case No. 2:16-cv-36, ECF No. 16.  On December 7, 2016, the Fourth Circuit entered a mandate advising that the judgment entered on October 24, 2016 took effect that day (December 7, 2016).  Case No. 2:16-cv-36, ECF No. 17.

## C.  Petition for a Writ of Habeas Corpus

On November 12, 2017[5], Petitioner filed the instant *pro se* Petition pursuant to Section 2254.  ECF No. 1.  Once again, Petitioner challenges the disciplinary hearing regarding his

---

[5]Although the Petition (ECF No. 1) was not received and filed by the Clerk's Office until December 1, 2017, the undersigned affords Petitioner the benefit of the "prison mailbox rule," which deems prisoner court filings to be "filed" as of the date that the documents are given to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) and Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.  *See also Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *4 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) ("For federal purposes, a pleading submitted by an incarcerated litigant acting *pro se* is deemed filed when it is delivered to prison officials for mailing.") (citing *Houston v. Lack*, 487 U.S.

Offense # 102 conviction that resulted in the loss of his good time credit. ECF No. 1, *passim*. Therein, Petitioner asserts essentially two grounds for habeas relief. [6]

First, that Petitioner's due process rights were violated during the disciplinary hearing proceedings because IHO Harmon improperly revoked one hundred and eighty (180) days of Petitioner's good time when she "improperly wrote a false report on the institutional review form" that contained "a conclusory statement and embellishment," and authoring such report did not comply with Operating Procedure 861.1. ECF No. 1 at 2. Specifically, Petitioner challenges (as he did in his Section 1983 Complaint) the fact that Maintenance Man Gratz presented live testimony only at Petitioner's first hearing, for Offense # 131 (Possession of Communications Device), but not at his second hearing, for Offense # 102 (Possession of Weapons) despite Petitioner's written request for such testimony in both, and in her written finding of Petitioner's guilt as to the Offense # 102 charge, IHO Harmon improperly attributed live testimony to Maintenance Man Gratz that was presented in the Offense # 131 hearing but was not presented in the later Offense # 102 hearing. ECF No. 1 at 2. *See also* Case No. 2:16-cv-36, ECF No. 2 at 3 n.2 ("It appears that the maintenance man only testified at the hearing on the Possession of a Communications Devise [sic] charge. Plaintiff objects that the maintenance man testified to details not in the Offense Report."). Petitioner contends that, "Maintenance Man Gratz never testify [sic] at the 102 offense weapons charge hearing. The maintenance man never stated or implied the screws could be removed with one's hands." ECF No. 1 at 2. The undersigned construes this first ground as a "mixed" claim because it challenges both the due process

---

266 (1988)). Here, the Certificate of Service affixed to the Petition bears a signature date of November 12, 2017. *See* ECF No. 1 at 4.

[6] Proper characterization of these claims dictates the treatment of the same when considering whether Petitioner's claims are exhausted, as discussed in Part II.A, *infra*.

Petitioner received during his disciplinary hearing and the sufficiency of the evidence to support the guilty finding as detailed in IHO Harmon's written report. In his second claim, Petitioner contends that the evidence presented at Petitioner's disciplinary hearing was insufficient to prove Petitioner's guilt by the governing standard: a preponderance of evidence. ECF No. 1 at 2-3 ("The Due Process requires 'some evidence' and the [VDOC Operating Procedure 861.1] requires that the 'preponderance of evidence presented at the hearing shall be sufficient to support a finding of guilt.") (emphasis in original).[7]

On March 26, 2018, Respondent filed a Rule 5 Response to the Petition, a Motion to Dismiss the Petition and Memorandum in Support, and a *Roseboro* Notice. *See* ECF Nos. 10-13. In support of the Motion to Dismiss, Respondent argues that the Petition should be dismissed with prejudice for essentially three reasons: (1) Petitioner failed to exhaust his state court remedies; (2) the matter is barred by the one year statute of limitations governing petitions seeking habeas relief; and (3) Petitioner was afforded due process within the disciplinary proceeding, which defeats his claim of entitlement to any federal habeas relief. ECF No. 12 at 3-8. On April 11, 2018, Petitioner filed a Response in Opposition, ECF No. 16, as well as a Motion to Amend Petition, ECF No. 17.[8] Respondent did not file a Reply to Petitioner's Response in Opposition and the time for doing so has expired. Accordingly, Respondent's Motion to Dismiss (ECF No. 11) is ripe for recommended disposition.

---

[7] OP 861.1(XV)(D)(11) provides "[a] preponderance of evidence presented at the hearing shall be sufficient to support a finding of guilt."

[8] This Motion to Amend (ECF No. 17) is discussed in greater detail by subsequent sections. *See* Part I.D, *infra*; Part IV, *infra*.

D. Petitioner's Motion to Amend/Correct the Petition (ECF No. 17)

On April 11, 2018[9], Petitioner filed a Motion to Amend the Petition. ECF No. 17. Therein, Petitioner makes essentially three requests. First, that the Court "allow any procedural unexhausted remedies to be amended if the Courts opted [sic] not to grant the habeas corpus." ECF No. 17 at 1. Second, that the Court "lift the procedural barred [sic] time limitation if opted not to grant the habeas corpus – due to the diligence of the Petitioner exhausting the judicial appeal process with the civil action lawsuit." ECF No. 17 at 1. Finally, that the Court allow Petitioner "to remand any unexhausted state remedies . . . and equitable tolling of re-characterization . . . and the Court's dismiss [sic] without prejudice without any specifications of the proper venue to pursue [habeas corpus]." ECF No. 17 at 1. Respondent filed no response to Petitioner's Motion to Amend and the time for doing so has expired. Accordingly, the Motion to Amend is also ripe for disposition.

## II.    DISCUSSION

A. Exhaustion

Respondent contends that the Petition suffers from a major deficiency, namely, that Petitioner's failure to exhaust his state court remedies bars federal habeas review of his claims by this Court. Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a prisoner held in state custody to challenge his detention on the ground that

---

[9] Although the Motion to Amend (ECF No. 17) was not received and filed by the Clerk's Office until April 16, 2018, as previously stated herein, the undersigned affords Petitioner the benefit of the "prison mailbox rule," which deems prisoner court filings to be "filed" as of the date that the documents are given to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) and Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. *See also Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *4 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) ("For federal purposes, a pleading submitted by an incarcerated litigant acting *pro se* is deemed filed when it is delivered to prison officials for mailing.") (citing *Houston v. Lack*, 487 U.S. 266 (1988)). Here, the signature block of the Motion bears a signature date of April 11, 2018. *See* ECF No. 17 at 1.

his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). *See also Karim v. Pearson*, No. 3:16CV950, 2017 WL 3300539, at *6 (E.D. Va. Aug. 2, 2017), *appeal dismissed*, 711 F. App'x 186 (4th Cir. 2018) ("As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.'") (quoting 28 U.S.C. § 2254(c)).

Specifically, Respondent argues that Petitioner failed to exhaust his claims because he did not present them to the highest state court before seeking federal habeas review by this Court. ECF No. 12 at 4 ("Within Clay's petition, he articulated the steps that he took after being found guilty at the disciplinary hearing on May 7, 2015. However, his recitation is devoid of any claim that he filed a state petition for a writ of habeas corpus. Upon information and belief, Clay did not file in the state court. As such, Clay never offered 'the state's courts an adequate

11

opportunity to address the constitutional claims advanced on federal habeas.'"). In response, Petitioner argues that his claims should be deemed exhausted by virtue of his zealous pursuit of administrative remedies, namely, appealing to the Warden and Regional Administrator. *See* ECF No. 16 at 1 ("Filing an appeal to the Warden and Regional Administrator can be construed an [sic] exhausting administrative remedies to permit the federal courts to adjudicate a decision under a federal statue [sic]."). Additionally, Petitioner argues that pursuant to Section 2254(b)(1), "exhaustion is not required if there is an absence of available state corrective processes or certain circumstances render such process ineffective to protect the petitioner's rights." ECF No. 16 at 1. *See also Stephenson v. Clarke*, No. 3:14-CV-00457-JAG, 2014 WL 5430995, at *2 (E.D. Va. Oct. 24, 2014) ("An exception to this requirement exists, however, under § 2254(b)(1)(B). This subsection allows a petitioner to avoid exhaustion when 'there is an absence of available State remedies; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant.'") (quoting 28 U.S.C. § 2254(b)(1)(B)).

For the reasons detailed herein, the undersigned **FINDS** that for the purposes of issuing a recommended disposition of this Petition, Petitioner effectively exhausted both of his claims, but in light of new Fourth Circuit habeas jurisprudence, the undersigned's finding is premised entirely on when the Petition was filed and notes that future petitions filed by other petitioners may require different treatment.

### 1. *In Re Wright*

On June 21, 2016, the Fourth Circuit announced that "regardless of how they are styled, federal habeas petitions of prisoners who are 'in custody pursuant to the judgment of a State court' should be treated as 'applications under section 2254' for purposes of § 2244(b), even if

they challenge the execution of a state sentence." *In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016). *See also Bey v. Hooks*, No. 5:15-HC-2097-FL, 2018 WL 2465471, at *3 (E.D.N.C. June 1, 2018) ("A state prisoner challenging execution of his sentence, however, must proceed under the more specific state habeas provisions contained in 28 U.S.C. § 2254.") (citing *In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016)). This new announcement of law is significant because it eliminates the ability of state inmates to file a petition challenging their loss of good time credit and/or disciplinary hearings pursuant to Section 2241 of the AEDPA without first filing for state habeas relief. This matters because unlike Section 2254, "§ 2241 is silent on exhaustion." *Janvier v. I.N.S.*, 174 F. Supp. 2d 430, 434 (E.D. Va. 2001). Notwithstanding this acknowledged silence, "[p]rior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals." *Rodriguez v. Ratledge*, 715 F. App'x 261, 265 (4th Cir. 2017) (citing *Boumediene v. Bush*, 553 U.S. 723, 793 (2008); *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010)). As discussed at the beginning of this section, one threshold requirement of a federal court's consideration of a Section 2254 petition is the state inmate's exhaustion of his claims by presenting the same claims to the highest state court either on direct review or via state habeas proceedings.

Prior to the Fourth Circuit's decision in *Wright*, a state inmate could exhaust his administrative institutional remedies (as Petitioner has done) and then file his habeas petition directly with the federal court pursuant to Section 2241, rather than presenting his habeas claims to the state courts first as is required by Section 2254. So long as timeliness was not at issue, the state inmate would be entitled to consideration of the merits of his claims by the federal court. *Wright* thus operates as an impediment to state inmates' access to federal habeas review by

inserting an extra hurdle that must be cleared before a federal court considers any claims for habeas relief. Unfortunately, *Wright* offers no guidance regarding the practical implications of the decision and new development of Fourth Circuit habeas law therein. Based on the undersigned's review, it does not appear that the Fourth Circuit (or any other District Court) has prescribed the precise manner in which a state inmate seeking federal habeas review of state institutional disciplinary proceedings effectively exhausts his claims.

The pertinent inquiry regarding the Petition before the Court is whether, as Petitioner argues, claims challenging institutional disciplinary hearings and convictions/penalties stemming therefrom are even cognizable in state habeas proceedings such that exhaustion was even possible.[10] Satisfying that inquiry necessarily requires the undersigned to consider the current status of habeas corpus jurisprudence in Virginia.

### 2. State Habeas Jurisprudence

The Virginia statute governing petitions for a writ of habeas corpus provides that "[t]he writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority." Va. Code Ann. § 8.01-654(A)(1). In 2009, the Supreme Court of Virginia announced an expansion of habeas corpus jurisdiction and abandonment of its long held and narrow view of habeas corpus jurisdiction in light of "subsequent statutory amendments, United States Supreme Court decisions, and decisions of [the Supreme Court of Virginia]." *Carroll v. Johnson*, 278 Va. 683,

---

[10] The undersigned notes, however, that "ruling on this question of exhaustion . . . is not necessary for reaching a decision on this motion to dismiss. A court may deny a § 2254 petition on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'" *Stephenson v. Clarke*, No. 3:14-CV-00457-JAG, 2014 WL 5430995, at *2 (E.D. Va. Oct. 24, 2014) (quoting 28 U.S.C. § 2254(b)(2)).

14

689, 685 S.E.2d 647, 649–50 (2009).[11] Prior to that time, Virginia adhered to the "immediate release rule" as established over fifty years earlier in *McDorman v. Smyth*, 187 Va. 522, 525, 47 S.E.2d 441, 443 (1948), "which provides that habeas corpus jurisdiction lies only where the release of the petitioner from his immediate detention will follow as a result of a judgment in his favor." *Carroll v. Johnson*, 278 Va. 683, 690, 685 S.E.2d 647, 650 (2009). In explaining the rationale for abandoning the immediate release rule, the *Carroll* Court observed,

> When this Court decided *McDorman*, we specifically relied on the United States Supreme Court's decision in *McNally v. Hill*, 293 U.S. 131 (1934), in adopting the "immediate release rule." However, the "immediate release rule" has since been called into question because the *McNally* decision was overruled by the Supreme Court in *Peyton v. Rowe*, 391 U.S. 54 (1968).

*Carroll v. Johnson*, 278 Va. 683, 691, 685 S.E.2d 647, 650 (2009). The *Carroll* Court also noted that post-*McDorman* amendments to the Virginia statute governing petitions for a writ of habeas corpus contemplated the availability of habeas corpus jurisdiction where the petitioner had not yet begun serving the sentence he sought to challenge via habeas relief. *See* Va. Code Ann. § 8.01-654(B)(3) ("Such petition may allege detention without lawful authority through challenge to a conviction, although the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner."). The *Carroll* Court also found "it is obvious that factual disputes of this nature are more accurately resolved when

---

[11] In *Carroll*, the defendant was serving a New Jersey state sentence when he was transported to Virginia to stand trial for a period of 288 days. At the conclusion of his trial and sentencing, Carroll was transported back to New Jersey to finish serving the remainder of his New Jersey sentence. Upon completion of that sentence, Carroll was brought back to Virginia to serve his Virginia sentence and when he was provided with an "update sheet" that provided his expected release date, the sheet indicated that the 288 days he spent in Virginia's custody awaiting trial were not counted towards his Virginia sentence because those days were served on the New Jersey sentence. Carroll filed a petition for a writ of habeas corpus challenging VDOC's refusal to credit the 288 days towards his Virginia sentence. The circuit court denied the petition, concluding that it lacked habeas corpus jurisdiction over Carroll's claim because "even a result in his favor would not result in his immediate release from confinement." *Carroll v. Johnso*n, 278 Va. 683, 688, 685 S.E.2d 647, 649 (2009).

the events are fresh and memories clear" and notably, "there is nothing in our habeas corpus jurisprudence which requires a petitioner to wait so long to pursue this remedy that he or she is at peril of being required to serve a sentence longer than his or her lawful sentence while his or her dispute is being resolved." *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 651 (2009). Additionally, in examining the Virginia habeas statute (Va. Code Ann. § 8.01-654(A)(1), the *Carroll* Court concluded that

> The statute extends the availability of the writ of habeas corpus to prisoners who claim they are "detained without lawful authority." In interpreting this language, we are guided by the principle of statutory construction that remedial statutes are to be construed liberally. *Greenberg v. Commonwealth*, 255 Va. 594, 600, 499 S.E.2d 266, 269 (1998). Additionally, we must consider the ordinary and plain meaning of statutory terms. *Winborne v. Virginia Lottery*, 278 Va. 142, 148, 677 S.E.2d 304, 306 (2009).

> So viewed, the statutory phrase "detained without lawful authority" does not limit the availability of a writ of habeas corpus to situations in which a result in the petitioner's favor will result in his or her immediate release. Rather, Code § 8.01–654(A)(1) allows a petitioner to challenge the lawfulness of the entire duration of his or her detention so long as an order entered in the petitioner's favor will result in a court order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement.

*Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009). In so concluding, the Supreme Court of Virginia explained

> Our decision today does not dramatically expand habeas corpus jurisdiction. Our holding only concerns cases in which ***an order, entered in the petitioner's favor, interpreting a conviction or a sentence, will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement***. Our holding does not extend habeas corpus jurisdiction to cases in which an order entered in the petitioner's favor will only give rise to a possibility of reducing the petitioner's term of imprisonment. Thus, disputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate

at which a prisoner earns good conduct or sentence credits, or challenges to parole board decisions, are not proper matters for habeas corpus jurisdiction because an order entered in the petitioner's favor in those cases will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence.

*Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009) (emphasis added).

In the wake of the *Carroll* decision, the Supreme Court of Virginia has consistently applied the *Carroll* holding to conclude that habeas does not lie in claims where an outcome favorable to the petitioner would not directly result in the petitioner's release or otherwise affect the duration of the petitioner's incarceration. For example, where a petitioner challenges his alleged right to potentially receive future good time credit under the more generous predecessor Good Conduct Allowance ("GCA") system rather than the less generous successor Earned Sentence Credits ("ESC") system[12], such a challenge is not cognizable under Virginia's habeas jurisdiction, and therefore the petitioner has no available state court remedies to exhaust. *See, e.g.*, *El Armstrong v. Clarke*, No. 7:16CV00106, 2016 WL 3661592, at *2 (W.D. Va. July 1, 2016). Similarly, where a petitioner challenges an administrative reduction in his GCA earning level due to the prison's failure to provide the petitioner with notice or a hearing as required by governing VDOC operating procedures prior to making such reduction, "it is futile to require him to exhaust state remedies because Virginia does not allow state habeas actions" for such claims. *Mills v. Holmes*, 95 F. Supp. 3d 924, 926 (E.D. Va. 2015) (explaining that the impetus

---

[12] "The GCA system involved a more generous good time allowance, permitting persons 'convicted of a felony or a misdemeanor on or after July 1, 1981,' to earn up to thirty days credit for every thirty days served. " *Brown v. Clarke*, No. 2:15CV138, 2015 WL 5579944, at *4 (E.D. Va. Sept. 22, 2015) (quoting Va. Code Ann. § 53.1–199). "[I]n 1994, the GCA system was significantly revamped. The new ESC system was implemented and applied to 'felony offense[s] committed on or after January 1, 1995.'" *Brown*, 2015 WL 5579944, at *4 (quoting Va. Code Ann. § 53.1–202.2). "Under the new system, persons eligible for ESC could earn 'a maximum of four and one-half sentence credits . . . for each 30 days served' substantially reducing the number of good time credits individuals can earn in a given time period." *Brown*, 2015 WL 5579944, at *4 (E.D. Va. Sept. 22, 2015) (quoting Va. Code Ann. § 53.1–202.3) (alterations in original).

for the inmate's alleged reduction in GCA level was the petitioner's transfer from one VDOC facility to another and the resultant security review performed by the transferee facility to determine whether the petitioner could be placed in general population).[13]

On the other hand, where the entry of an order favorable to the petitioner would, on its face and standing alone, directly impact the duration of a petitioner's confinement in state custody, the matter does lie in habeas corpus and exhaustion of state remedies is required. For example, in a case factually similar to the one at bar, a court in the Western District of Virginia concluded that under *Carroll*, the state of Virginia's habeas statute ***does*** recognize a loss of good time credits imposed as a disciplinary measure as a challenge sounding in habeas (and therefore exhaustion was required):

> Virginia's habeas corpus jurisdiction includes "cases in which an order entered in the petitioner's favor . . . will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement" . . . . Thus, a petitioner's challenge to the unconstitutional loss of vested time-credit is cognizable on Virginia state habeas review, because the petitioner is "detained without lawful authority."

*Adams v. Fleming*, No. 7:16CV00445, 2017 WL 2992508, at *3 (W.D. Va. July 12, 2017) (quoting *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009)) (internal quotations and citations omitted).[14]    In arriving at this conclusion (and finding that the petitioner had

---

[13] The Supreme Court of Virginia has also found that habeas corpus jurisdiction does not extend to challenges regarding the constitutionality of Virginia's parole process and/or parole laws. *See, e.g., Robinson v. Clarke*, No. 2:11CV00412, 2012 WL 604033, at *2 (E.D. Va. Feb. 23, 2012) (where inmate challenged Virginia's parole process, "[t]he Supreme Court of Virginia dismissed his petition on June 9, 2011, finding that Virginia's habeas corpus jurisdiction did not extend to the claims Robinson sought to raise."); *Williamson v. Clarke*, No. 2:10CV522, 2011 WL 2790263, at *1 (E.D. Va. May 24, 2011), *report and recommendation adopted*, No. 2:10CV522, 2011 WL 2728981 (E.D. Va. July 12, 2011) (Supreme Court of Virginia finding "habeas does not lie in this matter" where petitioner challenged constitutionality of Virginia's parole laws).

[14] In his petition, Adams alleged he was denied due process of law at his disciplinary proceedings, specifically when the Institutional Disciplinary Hearing Officer did not give him access to security surveillance videos that contained exculpatory *Brady* evidence, and such unconstitutional withholding of evidence resulted in a demotion in class level

procedurally defaulted on his claims by failing to present them to the Supreme Court of Virginia), the *Adams* Court rejected the petitioner's argument that "his default is excused because Va. Code § 8.01-654 'does not have a remedy/exception for prisoners to challenge unconstitutional decisions by an institutional disciplinary hearings officer during a[n] institutional disciplinary hearing in a prison setting,'" since "Virginia's habeas corpus jurisdiction includes 'cases in which an order entered in the petitioner's favor . . . will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement.'" *Adams v. Fleming*, No. 7:16CV00445, 2017 WL 2992508, at *3 (W.D. Va. July 12, 2017) (quoting *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009)). "Thus, a petitioner's challenge to the unconstitutional loss of vested time-credit is cognizable on Virginia state habeas review, because the petitioner is 'detained without lawful authority.'" *Adams v. Fleming*, No. 7:16CV00445, 2017 WL 2992508, at *3 (W.D. Va. July 12, 2017) (quoting *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009)).

Stated another way, the Section 2254 requirement that an incarcerated state petitioner exhaust his state remedies before presenting his claims for federal habeas review is only applicable to challenges where if an order favorable to the petitioner was entered, such order would directly impact the duration of a petitioner's confinement. Alternatively, if the entry of an order favorable to a petitioner would have no immediate or direct impact on the duration of his confinement, the petitioner is not required to exhaust his claims via presentment of such claims to the state courts. The undersigned will next address the applicability of such a conclusion to Petitioner's claims.

---

that affected his ability to earn good-time credits in the future. *See Adams v. Fleming*, No. 7:16CV00445, 2017 WL 2992508, at *1 (W.D. Va. July 12, 2017).

### 3. Exhaustion of Petitioner's Claims

Here, Petitioner challenges both the due process he received and the conviction which led to his loss of good time credit. As discussed in the immediately preceding section, the nature of these claims dictates whether Petitioner was required to exhaust his claims.

In Claim 1, which the undersigned previously described as a "mixed" claim, Petitioner challenges in part, the due process that was afforded him and therefore the relief sought for this portion of Claim 1 would be that Petitioner receives the due process he claims to be owed. Importantly, the duration of Petitioner's confinement would not be directly affected by the entry of an order granting such relief. *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009).[15] Therefore, this part of Claim 1 does not lie in habeas and the Supreme Court of Virginia would have rejected this portion of the claim as not cognizable under habeas jurisdiction. *See Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009) ("Code § 8.01–654(A)(1) allows a petitioner to challenge the lawfulness of the entire duration of his or her detention so long as an order entered in the petitioner's favor will result in a court order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement."). It would have been futile for Petitioner to "exhaust" this portion of Claim 1 by filing with the Supreme Court of Virginia because under *Carroll*, the issue is not cognizable in habeas. Thus, by completing the Level I and Level II administrative appeals available within the VDOC system, the undersigned **FINDS** that Petitioner exhausted this portion of Claim 1.

---

[15] Hypothetically, if the Court entered an order granting Petitioner a new hearing and at such hearing Petitioner was found not guilty of Offense # 102, then his good time credits would be restored, thus affecting the duration of his incarceration. However, such a tangential connection to Petitioner's confinement is far too attenuated to the length of his confinement for the matter to lie in habeas. As the Supreme Court of Virginia cautioned: "[o]ur decision today ***does not*** dramatically expand habeas corpus jurisdiction." *Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009) (emphasis added).

20

The remaining part of this mixed first claim challenges the sufficiency of the evidence and the conviction itself that resulted from allegedly deficient due process, as does Petitioner's second claim. Accordingly, this other portion of mixed Claim 1 and Claim 2 are cognizable in habeas because if the Court enters an order disposing of these Claims that is favorable to Petitioner, it would directly affect the duration of his confinement by reinstating the good time credits he lost as a penalty for his Offense # 102 conviction. Therefore, pursuant to *Carroll v. Johnson*, the matter contemplated by this portion of Claim 1 and Claim 2 does "lie in habeas" and Petitioner should have exhausted this portion of mixed Claim 1 and Claim 2 by filing a state habeas petition. *See Adams v. Fleming*, No. 7:16CV00445, 2017 WL 2992508, at *3 (W.D. Va. July 12, 2017) (quoting *Carroll v. Johnson*, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009)).

The Fourth Circuit's decision in *In re Wright* was published on June 21, 2016. Petitioner lost his good time credits on May 7, 2015. Although *Carroll* had already been decided at that time (recognizing this type of habeas claim for the loss of good time credit), the Fourth Circuit had not yet announced the requirement that state habeas petitioners proceed under Section 2254, and so habeas petitioners like Petitioner were free to file petitions pursuant to Section 2241. Thus, after losing his good time credits, Petitioner then began the institutional appeal process, which became final on August 21, 2015 and pre-*Wright*, would have satisfied the administrative remedies exhaustion requirements of Section 2241. Petitioner submitted the Petition on November 12, 2017. *See* ECF No. 1 at 4. It would be neither reasonable nor conducive to the effective administration of justice to expect *pro se* incarcerated Petitioner to be abreast of new Fourth Circuit case law announced contemporaneously with the filing of the Petition and the resultant implications thereof, especially in light of the Fourth Circuit's acknowledgment that

21

"[h]eretofore, we have sent mixed messages on this issue without squarely addressing it. . . . With this opinion, we clear up any confusion on this issue." *In re Wright*, 826 F.3d 774, 779 n.5 (4th Cir. 2016).   Accordingly, the undersigned excuses Petitioner's failure to submit the sufficiency of evidence claims to the state court in a state habeas petition, and **FINDS** that Petitioner has exhausted both of his claims by pursuing both the Level I and Level II appeals within VDOC.  The undersigned expresses no opinion regarding the applicability of this fact-specific conclusion to future petitions filed by other incarcerated petitioners within this Division.

B. Timeliness

Respondent also contends that the Petition suffers from another deficiency, namely, that Petitioner failed to timely file the instant Petition, and that he is entitled to neither statutory nor equitable tolling.  For the reasons expressed herein, the undersigned agrees.

1. *Statute of Limitations under the AEDPA*

The undersigned has already concluded that Petitioner properly filed the instant Petition pursuant to Section 2254, which applies to writs of habeas corpus filed by anyone "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).  In comparison, Section 2241 applies to writs of habeas corpus filed by an individual alleging that he "is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241.  It is well established that "[p]etitions filed under § 2254 are subject to the one-year statute of limitations established in 28 U.S.C. § 2244(d), as well as § 2244(b)'s limitations on the filing of successive habeas petitions," whereas "[p]etitions filed under § 2241 are not subject to the same limitations." *Goodman v. Pearson*, No. 1:14CV1335 (GBL/MSN), 2015 WL 13064942, at *1 (E.D. Va. Mar. 27, 2015) (citing *Felker v. Turpin*, 518 U.S. 651, 662 (1996) ("[The] authority to

22

grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'")) (alterations in original).  Among such limitations is the statute of limitations.

"On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ('the AEDPA')." *Gilmore v. Ballard*, No. 2:09-CV-00041, 2009 WL 6319261, at *1 (S.D.W. Va. Oct. 22, 2009), *report and recommendation adopted in part*, No. CIV.A. 2:09-00041, 2010 WL 1286891 (S.D.W. Va. Mar. 26, 2010).  The applicable section of the AEDPA provides, in pertinent part, that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Additionally, Section 2244(d)(2) of the AEDPA further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

23

Here, in Claim 1, Petitioner challenges the execution of his state sentence rather than attacking the underlying judgment of conviction.   Accordingly, Section 2244(d)(1)(D) controls the date on which the limitation period commences with respect to Claim 1.   Therefore, the limitations period began running on the date that Petitioner became aware, through the exercise of due diligence, of the allegedly illegal deprivation of his due process rights by VDOC.  *See Karim v. Pearson*, No. 3:16CV950, 2017 WL 3300539, at *3–4 (E.D. Va. Aug. 2, 2017), *appeal dismissed*, 711 F. App'x 186 (4th Cir. 2018) ("Because Karim challenges the execution of his sentence rather than the judgment of conviction, § 2244(d)(1)(D) controls the date on which the limitation period commences.") (citing *Childs v. Johnson*, 3:09cv793, 2010 WL 5186757, at *3 (E.D. Va. Dec. 10, 2010) (quoting *Wade v. Robinson*, 327 F.3d 328, 332–33 (4th Cir. 2003))). Claims regarding the sufficiency of evidence in Section 2254 petitions such as Petitioner's second claim are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the expiration of the time to seek direct review of the highest state court's decision by the Supreme Court of the United States, or more than a year after the date on which the factual predicate of the claims presented could have been discovered by a diligent petitioner.  *See* 28 U.S.C. § 2244(d)(1)(A) and (D).[16]

### 2. The Petition is untimely

In the instant matter, the date on which the disciplinary decision became final was at the conclusion of Petitioner's Level II appeal, on August 21, 2015, when the Regional Administrator

---

[16] Petitioner does not allege facts on which his federal filing period could be calculated under any other subsection of § 2244(d) than subsections (d)(1)(A) and (d)(1)(D).  *See* 28 U.S.C. § 2244(d)(1)(A) (the one year limitation period begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review") and (D) (the one year limitation period begins running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence").  Indeed Respondent contends that these two subsections are applicable.  *See* ECF No. 12 at 4.

denied Petitioner's Level II appeal, and upheld the Offense # 102 charge.  ECF No. 12, attach. 1 at 81.

Applying the one year AEDPA deadline under 28 U.S.C. § 2244(d)(1)(D), Petitioner's statute of limitations for filing a federal petition raising his first Claim (challenging the due process he received during the hearing) for federal habeas corpus relief expired on August 20, 2016.  The instant Petition was signed on November 12, 2017, which is 814 days (or 2 years, 2 months, and 22 days) after the time for filing a federal habeas petition began to run on August 21, 2015, and consequently, 449 days (or 2 years, 2 months, and 22 days) beyond the 365 day (one year) deadline provided by the AEDPA.[17]

If the undersigned applies the AEDPA's one year statute of limitations under (d)(1)(A), Petitioner's statute of limitations for filing a petition asserting Claim 2 (sufficiency of the evidence), then Petitioner's deadline to file the federal habeas petition expired on August 19, 2017.  Petitioner's institutional disciplinary decision became final on August 21, 2015, when the Regional Administrator denied Petitioner's Level II appeal.  Assuming without deciding that Petitioner had to exhaust Claim 2 (sufficiency of the evidence) by filing a habeas petition with the state court, the deadline provided by Va. Code Ann. § 8.01-654(A)(2) required that Petitioner file with the state court by August 20, 2016, or one year after the cause of action accrued on

---

[17] Although the Petition was received by the United States District Court for the Eastern District of Virginia in the Richmond Division on November 22, 2017, and filed by the Norfolk Division on December 1, 2017, the undersigned affords Petitioner the benefit of the "prison mailbox rule," which deems prisoner court filings to be "filed" as of the date that the documents are given to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) and Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.  *See also Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *4 (E.D. Va. Sept. 8, 2016), appeal dismissed, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) ("For federal purposes, a pleading submitted by an incarcerated litigant acting *pro se* is deemed filed when it is delivered to prison officials for mailing.") (citing *Houston v. Lack*, 487 U.S. 266 (1988)).  The Certificate of Service attached to the Petition bears a signature and prisoner mailing date of November 12, 2017.  *See* ECF No. 1 at 4.

August 21, 2015. *See* Va. Code Ann. § 8.01-654(A)(2) ("A petition for writ of habeas corpus ad

subjiciendum, other than a petition challenging a criminal conviction or sentence, shall be

brought within one year after the cause of action accrues."). Further, even generously construing

Petitioner's state habeas period as the "direct review" contemplated by Section 2244(d)(1)(A),

the latest date on which Petitioner could have timely filed Claim 2 would be August 19, 2017, or

one year from August 20, 2016 (the expiration of the time for seeking state court review of

Claim 2).

Thus, even if Petitioner is afforded the benefit of applying this later deadline (August 19,

2017) to both of Petitioner's claims, the result is unchanged because the Petition filed on

November 12, 2017 is still untimely by eighty-five (85) days. As discussed in the subsequent

section, because Petitioner declined to file a state habeas petition (choosing instead to file a

Section 1983 action in this Court), the one year AEDPA statute of limitations was not tolled.

*See* Part II.B(3), *infra*. Unless Petitioner is entitled to application of either statutory tolling or

equitable tolling, the untimeliness of the Petition bars this Court's review of the same.

### 3. Petitioner is not entitled to statutory tolling

As explained in Parts II.B(1)-(2), *supra*, Section 2244(d)(2) of the AEDPA provides for

tolling of the federal one year statute of limitations during the pendency of a "properly filed"

state habeas petition. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed

application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation under this

subsection.").

The undersigned **FINDS** that the benefits of statutory tolling (pursuant to 28 U.S.C. § 2244(d)(2)) are unavailable to Petitioner because no such state habeas petition was filed. To be sure, Petitioner was entitled to endeavor to secure appellate review of the District Court's dismissal of these claims as a Section 1983 suit. However, Petitioner's efforts to appeal the District Court's dismissal of his claims when asserted in a Section 1983 action do not satisfy the portion of the AEDPA that would entitle Petitioner to statutory tolling of this claim. Having determined that statutory tolling is unavailable to Petitioner, the undersigned considers Petitioner's final refuge: equitable tolling.

### 4. *Petitioner is not entitled to equitable tolling*

"To qualify for equitable tolling, a petitioner must demonstrate both that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). In the Fourth Circuit, that means "the petitioner is obliged to specify the steps he took in diligently pursuing his federal claim, and a lack of diligence generally acts to negate the application of equitable tolling." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)). "In addition, the petitioner must 'demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances.'" *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24,

2018) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).  Petitioner fails to make an adequate demonstration of either.

In both his Opposition to the Motion to Dismiss (ECF No. 16) and in his Motion to Amend Petition (ECF No. 17), Petitioner acknowledges that the Petition is untimely and appears to assert his entitlement to equitable tolling.  *See* ECF No. 16 at 2 ("If the Courts allowed time frames to run in accordance to the last ruling of the judicial ruling on an administrative challenge of the disciplinary matter in connection to the due process rights violation – this would be tolled in the specific time frame within a year to file a habeas corpus under an administrative challenge by re-characterization [sic]").  *See also* ECF No. 17 at 1 ("The Petitioner request [sic] to lift the procedural barred [sic] time limitation if opted not to grant the habeas corpus – due to the diligence of the Petitioner exhausting the judicial appeal process with the civil action lawsuit Case 2:16-cv-00036-AWA-LRL, which was officially concluded December 7, 2016.").  Such efforts are unavailing as Petitioner cites to no case law in support of his position that his appellate endeavors regarding his Section 1983 case amounts to "extraordinary circumstances" or exemplify Petitioner's diligence.  This is especially true in light of the February 16, 2016 Dismissal Order's specific statement that the Section 1983 action was being dismissed "without prejudice to [Petitioner's] right to file his claim regarding the Possession of a Weapon charge as a petition for a writ of habeas corpus in the appropriate venue."  Case No. 2:16-cv-36, ECF No. 2 at 5.  *See also Royster v. Polk*, 299 F. App'x 250, 251 (4th Cir. 2008) ("Because he challenges the loss of good time credits, [Petitioner's] action at its core seeks to shorten the length of his confinement. Therefore, the action sounds in habeas.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)).  This statement put

Petitioner on notice that in the Court's view, any challenges to his Offense # 102 conviction were properly brought as a habeas petition, which Petitioner tacitly acknowledges in his Motion to Amend, wherein he complains that "the Court's dismiss [sic] without prejudice without any specifications of the proper venue to pursue under the jurisdiction of the habeas corpus." ECF No. 17 at 1.

Moreover, even if the undersigned was inclined to entertain Petitioner's request for equitable tolling – which it is not – the record demonstrates that Petitioner was far from diligent in his efforts to vindicate the alleged violations of his rights. On one hand, Petitioner points to his filing of the Section 1983 action as proof of his diligence and notes that the Fourth Circuit mandate did not take effect until December 7, 2016. ECF No. 16 at 2. However, assuming that Petitioner was relying on the Fourth Circuit's resolution of his Section 1983 appeal to explore any federal habeas action, he still waited nearly a full year after the Fourth Circuit's decision became final on December 7, 2016 before authoring and mailing the Petition on November 12, 2017. To the extent that Petitioner appears to seek equitable tolling based on his "ignorance of AEDPA's 1 year limitation" and the Court's "discretionary authority to make exceptions of the procedural rules if Petitioner due process [sic] rights were violated under the condition of impropriety or cover ups," such efforts are equally unavailing because they do not meet the stringent threshold standard required for equitable tolling. *See, e.g., United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling. . . . Stated differently, [Petitioner's] misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control.") (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the

case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's *own* ignorance or mistake does not warrant equitable tolling. . . ."); *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a *pro se* prisoner's ignorance of the law warranted equitable tolling; *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (same)); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) ("But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose [sic] the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.").

Although the Supreme Court has made clear that "the timeliness provision in the federal habeas corpus statute is subject to equitable tolling," *Holland v. Florida*, 560 U.S. 631, 634 (2010) (citing 28 U.S.C. § 2244(d)), on this record, the undersigned **FINDS** that Petitioner fails to establish that such tolling should be applied to excuse his delayed filing of the instant Petition. The undersigned's reluctance to find that Petitioner demonstrated his entitlement to equitable tolling is further informed by the Fourth Circuit's recognition that equitable tolling is to be applied only in rare circumstances. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) ("We believe, therefore, that any resort to equity must be reserved for those rare instances where—due

to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). To hold otherwise would run afoul of the Supreme Court's "historic limitation of equitable tolling to extraordinary circumstances beyond a petitioner's control." *Whiteside v. United States*, 775 F.3d 180, 187 (4th Cir. 2014). Accordingly, in the absence of statutory or equitable tolling, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** on the basis of the untimeliness of the Petition.

Although the undersigned's determination that the Petition was not timely filed provides sufficient grounds to recommend granting the Motion to Dismiss, the undersigned will also address Respondent's alternative basis for dismissal of the Petition, namely, that Petitioner's claims are substantively meritless.

C. Petitioner is not entitled to federal habeas relief

Assuming *arguendo*, that the Petition was not untimely and therefore subject to dismissal on that ground, Petitioner would not be entitled to the relief he seeks because his claims lack merit.

When a "petitioner has already served time or had credits applied to a sentence, petitioner is entitled to the full benefit of accumulated credits, and the VDOC cannot take away that benefit without due process." *Higdon v. Jarvis*, No. 7:11-CV-00330, 2012 WL 738731, at *5 (W.D. Va. Mar. 5, 2012) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate

31

under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (finding that the deprivation of earned good-time credit without notice or hearing and without due process is subject to habeas review)). *See also Royster v. Polk*, 299 F. App'x 250, 251–52 (4th Cir. 2008) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 315-22 (1976) (discussing limited range of inmate rights in prison disciplinary proceedings); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004) (noting inmates have no right to confront adverse witnesses in institutional proceedings)).

Contrary to Petitioner's contentions, his due process rights were not violated by the way in which his disciplinary proceeding was conducted, or by the specific result thereof, and therefore Petitioner is not entitled to reinstatement of his one hundred and eighty (180) days of good conduct time.

### 1. Petitioner's Disciplinary Hearing Complied with Wolff

In asserting the claims of error based on IHO Harmon's failure to provide Petitioner with the requested "Cell Inspection Form," failure to provide Petitioner with various incident reports, and IHO Harmon's authorship of a written finding of guilt that incorrectly reflected the evidence presented at his Offense # 102 hearing, Petitioner does not cite to any case law in support of his assertions. *See* ECF No. 1, *passim*. *See also* ECF No. 16, *passim*. Notwithstanding this failure to provide support for his position, the undersigned concludes that this inquiry is controlled by *Wolff v. McDonnell*, the seminal Supreme Court case which addressed the due process rights of prisoners and the requirements of prison disciplinary proceedings to avoid violations of such rights. 418 U.S. 539 (1974). In *Wolff*, the Supreme Court announced that disciplinary hearings of prison inmates must be structured in order to comport with the demands of the Due Process

Clause of the Fourteenth Amendment.  As the Fourth Circuit explained, "[t]he [*Wolff*] Court was clear that inmates retain rights under the Due Process Clause, but that their rights are 'subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.'" *Brown v. Braxton*, 373 F.3d 501, 504 (4th Cir. 2004) (quoting *Wolff*, 418 U.S. at 556).  In fashioning black letter law to govern

> the balance between inmates' due process interests and prison authorities' penological needs, the *Wolff* Court drew some firm lines.  On the one hand, inmates are entitled to advance written notice of the claimed violation, as well as a written statement concerning the evidence relied upon and the reasons for the disciplinary action taken. . . . On the other hand, inmates are not entitled to confront the witnesses against them, nor are they guaranteed the right to retained or appointed counsel.

*Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563, 567-70 (1974); *Baxter v. Palmigiano*, 425 U.S. 308, 315-22 (1976) (discussing limited range of inmate rights in prison disciplinary proceedings)) (internal citations omitted).  When determining the specific procedural due process rights of an inmate facing a loss of good conduct time, the *Wolff* Court required the following three things: (1) the inmate should be provided with advanced written notice of the claimed violation; (2) the inmate should be allowed the opportunity "to call witnesses and present documentary evidence in his defense;" (3) the factfinder of the evidence shall render a written decision which identifies the evidence relied upon and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. *See Wolff*, 418 U.S. at 563-67. For the reasons stated herein, the undersigned **FINDS** that all of the due process requirements enumerated by the United States Supreme Court in *Wolff* were met.

33

### a. Advanced Written Notice of Violation

As evidenced by his signature, and witnessed by Corrections Officer J. Fuller, on April 28, 2015 at approximately 1:35 PM, Petitioner was provided with a Disciplinary Offense Report describing Petitioner's alleged commission of Offense # 102. *See* ECF No. 12, attach. 1 at 44 ("I have been informed of the charges against me, and advised of my rights at the Disciplinary Hearing."). Accordingly, the first *Wolff* requirement is satisfied. *See Wolff v. McDonnell*, 418 U.S. 539, 563 (1974) ("Two of the procedures that the Court held should be extended to parolees facing revocation proceedings are not, but must be, provided to prisoners . . . if the minimum requirements of procedural due process are to be satisfied. These are advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.").

### b. Petitioner was permitted to call witnesses and present evidence

Petitioner argues that IHO Harmon failed to call and cross examine Maintenance Man Gratz at the Offense # 102 hearing, despite Petitioner's request for live testimony by Maintenance Man Gratz. ECF No. 16 at 3, ¶ 24 ("The Maintenance Man Gratz testified at the (131 offense disciplinary hearing) in which this is not the offense hearing in question . . . . Gratz did not give any descriptive specific details of what screws were loose – Gratz simply stated the screws were loose, he did not state those screws could be removed with one's hand, in terms of Gratz [sic]."); ¶ 26 ("The Hearing Officer opted not to ask Gratz any questions in the second disciplinary offense hearing which was the 102 weapons offense; moreover, it was quite suspiciously transparent that Gratz's credibility was questionable, due to the fact the hearing officer did not cross examine Gratz for the record to have the required evidence of his testimony

recorded."). Additionally, Petitioner contends that he was deprived of documentary evidence that would have aided in his defense. ECF No. 1 at 3 ("Petitioner submitted a documentary evidence form requesting to show that no cell inspection form nor a cell inspection was conducted prior to the Petitioner being assigned to this cell and even after Petitioner cellmate [sic] moved six months prior to the offense wherefore Petitioner received a different cellmate. The documentary evidence form was denied, cited by the hearing officer that staff are not required to open/remove light fixtures for inspections.").

The record shows that Petitioner filed written requests for the following items: (1) a witness request for Maintenance Man Gratz; (2) a witness request for Officer B.T. Wise; (3) a witness request for Officer A. Freeman; (4) a witness request for offender and Petitioner's cellmate N. Tesfaye; (5) a documentary evidence request for the policy on cell inspections; (6) a documentary evidence request for a copy of the cell inspection form for cell D-125 West Side; (7) a documentary evidence request for the policy on common areas; (8) a documentary evidence request for incident reports written by Officer Freeman, Officer Wise, or Maintenance Man Gratz. *See* ECF No. 12, attach. 1 at 3.

Pursuant to his written requests, Petitioner received the written statements of Maintenance Man Gratz, Officer Wise and the same were read into the record. *See* ECF No. 12, attach. 1 at 3. *See also* ECF No. 12, attach. 1 at 46-47 (written request for and written statement of Officer Wise); 48-49 (written request for and written statement of N. Tesfaye); 50-51 (written request for and written statement of Officer Freeman); 52-53 (written request for and written statement of Maintenance Man Gratz). Present at the Offense # 102 hearing were the Reporting Officer (Lt. Moiczek), Officers Freeman and Wise, and Maintenance Man Gratz. *See* ECF No.

35

12, attach. 1 at 3.   Lt. Moiczek and Officer Freeman presented oral testimony and Petitioner questioned both.   Maintenance Man Gratz's statement was read into the record and Gratz was given the opportunity to make any additional comments regarding his involvement with the offense.   ECF No. 12, attach. 1 at 90.   Petitioner was given the opportunity to question Maintenance Man Gratz, but Petitioner declined and Maintenance Man Gratz was excused from the Offense # 102 hearing. ECF No. 12, attach. 1 at 90-91.   Pursuant to *Wolff*, all that Petitioner was entitled to was ***the opportunity*** to cross examine a witness, which he was given and chose not to utilize.   Moreover, IHO Harmon was not required to exercise this right on Petitioner's behalf.   Petitioner's failure to utilize the panoply of rights afforded to him at the time of his disciplinary hearing cannot now form the basis of Petitioner's attack on his institutional offense conviction. *See Blow v. Compagnie Mar. Belg (Lloyd Royal) S. A.*, 395 F.2d 74, 79 (4th Cir. 1968) ("It is well settled that the unexplained failure of a party litigant to call a material witness to give evidence in his behalf supports an inference that such witness, if permitted to testify, would testify against the interests of the party failing to present this testimony.").

IHO Harmon denied Petitioner's request for a copy of the policy on cell inspections, citing restrictions for security reasons. ECF No. 12, attach. 1 at 54.   Petitioner's request for the cell inspection form for his cell (purportedly to show that the light fixture in cell D-125 West Side was never inspected) was denied as irrelevant, because "staff are not required to remove light fixture." ECF No. 12, attach. 1 at 55. *See also* ECF No. 12, attach. 1 at 91 ("You were further advised that your reasons cited for the requesting of the cell inspection form you requested would not indicate the information in which you were requesting as your primary basis was not asserted by policy.   Neither cell inspection forms nor the policy that governs cell

searches require any light covers to be physically removed as part of searching the light fixture. Generally, the light covers/fixtures are visually searched by the officers or persons conducting the search.").

Petitioner's request for a copy of the common area policy was granted, and Petitioner was provided with a handwritten copy of OP 861.1(VIII)(E)(1) on April 29, 2015 at 5:15 PM. *See* ECF No. 12, attach. 1 at 62-63 ("Each offender assigned to a double cell is individually responsible for anything found on his person or in his locker, whether locked or unlocked. Both offenders are jointly responsible, and both may be charged for contraband found in the common areas of the cell, unless one offender claims responsibility for the contraband or there is additional reliable evidence linking the offender to the item.").

Petitioner's request for incident reports authored by Officer Wise, Officer Freeman, and Maintenance Man Gratz were denied because such material is restricted from offender access. *See* ECF No. 12, attach. 1 at 56. *See also* ECF No. 12, attach. 1 at 91 ("You were advised that Incident Reports are restricted to offender access, and therefore was not obtained for the hearing.").

Regarding the denials of documentary evidence, Petitioner points to no case law or other authority that would entitle him to the information he sought and was denied, or for the position that such denials violated Petitioner's due process rights as announced by *Wolff. See Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) (observing that "*Wolff* establishes beyond doubt all that is necessary to resolve this case: hearing officers like [Harmon] may decide that legitimate penological interests justify the denial of an individual inmate's [requests], and their decisions

37

are not to be lightly second-guessed by courts far removed from the demands of prison administration"). Accordingly, the undersigned **FINDS** that *Wolff's* second requirement is met.

### c. IHO Harmon rendered a written decision

It is undisputed that IHO Harmon generated a written decision that identified the evidence relied upon and the reasons for the disciplinary action. *See* ECF No. 12, attach. 1 at 45 ("Four weapons was [sic] found in the light fixture of this offender's cell; neither him or [sic] his cell partner claim ownership. Maintenance Gratz testified that the screws in the light fixture were loose and could use one's hand to remove them."). As previously discussed, Petitioner takes issue with the fact that the written decision indicates that Maintenance Man Gratz presented verbal testimony at the Offense # 102 hearing, but he only presented live testimony at the earlier Offense # 131 hearing, and not at the Offense # 102 hearing, and consequently, that Maintenance Man Gratz never made any statement about whether the screws could be removed by hand such that the written decision's reference thereto is a fabrication and embellishment. ECF No. 16 at 3. Even assuming that the undersigned were not to include the allegedly fabricated statement of Maintenance Man Gratz regarding the method by which the screws could be removed in its consideration of this claim, the written decision generated by IHO Harmon provides a sufficient basis for the Offense # 102 conviction and satisfies the requirements of *Wolff*. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974) ("We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action. . . . Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that

38

administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)) (internal citation omitted).

Additionally, to the extent that Petitioner seeks to provide a narrative of what occurred in a manner that intimates the deliberate absence of Maintenance Man Gratz's live testimony or any testimony at all, such efforts are not viewed favorably by the undersigned. Based on the affidavit executed under the penalty of perjury by Karen Stapleton, Manager of the Offender Discipline Unit for VDOC, Maintenance Man Gratz was indeed present at the Offense # 102 hearing, Petitioner was offered the opportunity to cross examine him and declined, and Maintenance Man Gratz's written statement was read into the record as is *required* by OP 861.1(XIV)(B)(1). *See* ECF No. 12, attach. 1 at 3-5 ("IHO Harmon obtained statements from each witness and they were read for the record. . . Neither [Petitioner] nor his advisor had questions for Lt. Moiczek, Mr. Gratz, or Officer Wise."). *See also* ECF No. 12, attach. 1 at 32 ("For Category I offenses . . . The IHO should read all witness statements into the record.").[18]

### d. Fair and Impartial Tribunal

Petitioner repeatedly avers that IHO Harmon arbitrarily concluded that Petitioner was guilty of the Offense # 102 charge and IHO Harmon improperly based the finding of guilt on conclusory and embellishing statements, which is a violation of OP 861.1 and "demonstrates a lack of impartiality." ECF No. 1 at 2. However, Petitioner has not stated facts showing that

---

[18] Pursuant to OP 861.1(V)(A)(102), Offense # 102 is a Category I Offense. *See* ECF No. 12, attach. 1 at 9.

IHO Harmon was biased against him. Rather, with respect to each denial of Petitioner's evidentiary requests, and to the ultimate finding of guilt as to the Offense # 102 charge, IHO Harmon "had logical and impartial reasons for denying a witness or rejecting [Petitioner's] proffered documentary evidence or defenses." *Donohue v. Lambert*, No. 7:13CV00397, 2014 WL 4825258, at *12 (W.D. Va. Sept. 25, 2014), *objections overruled sub nom. Donohue v. Lt. J.D. Lambert*, No. 7:13CV00397, 2015 WL 9581868 (W.D. Va. Dec. 30, 2015). These justifications were "consistent with the concern for 'institutional safety or correctional goals' endorsed in *Wolff*." *King-Fields v. Leggett*, No. CIV.A. ELH-11-1491, 2014 WL 694969, at *21 (D. Md. Feb. 19, 2014) (citing *Wolff*, 418 U.S. at 566).

### 2. *Petitioner's conviction is supported by "some evidence"*

In asserting the claim of error based on IHO Harmon's finding that Petitioner committed Offense # 102 (possession of weapons), Petitioner's second ground for habeas relief (as articulated in a portion of Claim 1 and in Claim 2) appears to rely upon the Supreme Court decision of *Superintendent v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court set forth the standard by which reviewing courts must consider whether a disciplinary proceeding and resultant decision satisfies a prisoner's due process rights, which is "some evidence." *Thompson v. Hall*, 883 F.2d 70 (4th Cir. 1989) ("[F]indings of prison disciplinary boards meet the minimum requirement of due process if they are supported by 'some evidence' on the record.") (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). Specifically, Petitioner takes issue with IHO Harmon's conclusion that the testimony presented at Offense # 102 hearing met the "preponderance of evidence" standard to find Petitioner guilty of Offense # 102 since Maintenance Man Gratz did not present live testimony at the Offense # 102 hearing. In support

of this ground, Petitioner requests that the Court engage in a course of conduct that is expressly prohibited by *Hill* by assessing the credibility of the witnesses and reweighing the evidence to reach a different result. *See Superintendent v. Hill*, 472 U.S. 445, 454-56 (1985).

Where a court finds, as the undersigned has done here, that the *Wolff* guidelines are satisfied, *see* Part II.C(1)(a)-(d), *supra*, Supreme Court case law requires this Court to afford the IHO's decision "'wide ranging deference' in pursuing legitimate penological concerns," *Thompson v. Hall*, 883 F.2d 70 (4th Cir. 1989) (citing *James v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 126 (1977)). The undersigned **FINDS** that the IHO's determination that Petitioner was guilty of the Offense # 102 charge meets the "some evidence" standard enunciated by the Supreme Court in *Hill*. 472 U.S. at 454. In fact, there was ***ample*** evidence that Petitioner and his cellmate were in joint possession of the weapons discovered in the light fixture: neither Petitioner nor his cellmate took ownership of items found in a common area of the cell, and Maintenance Man Gratz's written statement (which was read into the record during the Offense # 102 hearing) indicated that when he disassembled the light fixture, "a shank fell out and there were other shanks taped to the back of the fixture." ECF No. 12, attach. 1 at 53. *See also* ECF No. 12, attach. 1 at 91 (Warden Manis denying Petitioner's Level I appeal because "neither [Petitioner] nor [his] cell partner claimed responsibility of the items, [Petitioner] then became equally responsible for the items being inside of the cell in an area in which [Petitioner and his cellmate] had both a reasonable amount of access to and a reasonable amount of physical control over. A review of [Petitioner's] institutional housing assignment reflected that you had resided in that particular cell for a period of time in which it would be unreasonable to imply that the items had been there prior to your occupancy").

To the extent that Petitioner attempts to discredit IHO Harmon's written decision by arguing that Maintenance Man Gratz a) did not actually testify at the Offense # 102 hearing, and b) did not testify at any point as to whether the screws were loose enough to be removed by hand, such efforts are unavailing.   As noted in the undersigned's consideration of Petitioner's *Wolff*-based claim,  integral to both IHO Harmon's finding and this Court's review thereof is the fact that Petitioner was given the opportunity to cross examine Maintenance Man Gratz but declined, and therefore Maintenance Man Gratz was excused from the Offense # 102 hearing, leaving IHO Harmon to rely upon his written statement, which Petitioner requested and received prior to the hearing, as well as the live testimony of Lt. Moiczek and Officer Freeman, of whom Petitioner either asked questions or otherwise exercise his due process rights.   Even without considering Maintenance Man Gratz's alleged statements regarding the ability to remove the light fixture screws by hand, the presence of multiple, large weapons in a common area of the shared cell as well as a cell phone and charger, coupled with the refusal of both Petitioner and his cellmate to claim ownership of the weapons or point fingers at one another, led IHO Harmon to arrive at a well-supported conclusion.

Furthermore, whether Petitioner believes that IHO Harmon erred by failing to consider his status as a "model prisoner who was employed 4 ½ years at Nottoway Prison prior to this offense, nearly 8 years infraction free, enrolled in college and had absolutely no history of one single act of violence or possession of knives in 18 years of being incarcerated," is not the standard by which this Court reviews the disciplinary proceeding, and especially in light of the number and size of the weapons recovered from the subject light fixture. *See* ECF No. 1 at 3. Rather, the Court must give great deference to the judgments made in performance of prison

42

officials' difficult job, and the inherent concerns for safety of both staff and inmates which are a constant presence in the "complex and difficult" environment of a correctional facility. *See Wolff*, 416 U.S. at 562 ("guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace."). *See also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.").

### 3. Conclusion

In summation, while Petitioner properly invoked Section 2254 as the vehicle to challenge the manner in which his disciplinary hearing was conducted and the sufficiency of the evidence to support his ultimate conviction, as detailed herein, the undersigned **FINDS** that the substantive claims in the Petition lack merit and the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss (ECF No. 11) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE**.

### III.    RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss (ECF No. 11) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE**.

### IV.    OUSTANDING MOTION

As noted in Part I.D, *supra*, Petitioner filed a Motion to Amend Petition (ECF No. 17) on April 16, 2018. Therein, Petitioner requests that the Court "allow any procedural [sic] unexhausted remedies to be amended if the Courts [sic] opted not to grant the habeas corpus."

43

ECF No. 17 at 1.    In light of the undersigned's conclusion regarding the exhaustion of Petitioner's claims as detailed in Part II.A, *supra*, Petitioner's Motion to Amend Petition (ECF No. 17) is **DENIED AS MOOT**.

## V.    REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and counsel of record for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 22, 2018

45